# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA ISABEL CORPENO-ARGUETA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, and B.I. ) <br> INCORPORATED, ) <br> ) <br> Defendants. ) <br> ) | Case No. 17-cv-7167 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM AND OPINION ORDER

Before the Court is the motion to dismiss [18] for lack of subject matter jurisdiction filed by Defendant United States of America. For the reasons set forth below, the motion [18] is denied. The case is set for further status on October 4, 2018 at 9:00 a.m.

## I. Background

Plaintiff Maria Isabel Corpeno-Argueta—a citizen of the Republic of El Salvador—crossed the United States border on or about December 26, 2014, seeking asylum in the United States. [16, at ¶ 1.] At the time that Plaintiff filed her amended complaint, her asylum case was still pending. *Id.* Defendant United States of America—by and through its employees working for the U.S. Department of Homeland Security's U.S. Immigration and Customs Enforcement ("ICE")— arrested Plaintiff upon entering the United States. *Id.* at ¶ 7.

On or about January 12, 2015, ICE placed Plaintiff in an alternative to detention program known as Intensive Supervision Appearance Program ("ISAP"). *Id.* at ¶ 8. When Plaintiff was placed in ISAP, Plaintiff's spouse and two minor children resided in Waukegan, Illinois. *Id.* at ¶ 9. Plaintiff did not have any criminal record. *Id.* As a condition of Plaintiff's release into the community to live with her family, ICE required Plaintiff (as a participant in ISAP) to be placed

in an ankle bracelet to be monitored electronically. *Id*. at ¶ 10. Plaintiff alleges that the decision to place her in an ankle monitoring device was made by ICE. *Id*. at ¶ 11. On or about January 12, 2015, Defendant B.I. Incorporated ("B.I.")—by and through its employees working in the scope of their employment at the Chicago office of ISAP—affixed a monitoring device to Plaintiff's right ankle. *Id*. at ¶ 12. Although Defendant B.I. placed the monitoring device on Plaintiff, removal of the monitoring device required action by ICE. *Id*. at ¶ 13. Plaintiff complied with all check-in and reporting requirements for ISAP by appearing in-person at the Chicago office of ISAP, which was operated by B.I. through a contract with ICE (or the United States of America). *Id*. at ¶ 16.

From January 2015 through September 2015, on each occasion that Plaintiff appeared in-person at the Chicago office of ISAP—approximately two times per month through July 2015 and one time per month in August and September 2015—Plaintiff complained to the ISAP office that the ankle monitoring device was too tight and too bulky, causing Plaintiff numbness, pain, and difficulty walking. *Id*. at ¶ 17. In March 2015, Plaintiff started requesting that the ISAP office remove and replace the electronic monitor with a monitor that was not as tight and not as bulky. *Id*. at ¶ 19. In the alternative, Plaintiff requested that the electronic monitor be loosened or placed on her other ankle. *Id*. The ISAP office refused Plaintiff's requests. *Id*. at ¶ 20

According to Plaintiff, starting in January 2015, when an employee of Defendant United States of America (the "United States" or the "Government") made monthly visits to Plaintiff's home, Plaintiff complained to the employee that the ankle monitor was too tight and too bulky, causing numbness, pain, and difficulty walking. *Id*. at ¶ 18. From the time of the decision to place Plaintiff in an ankle monitoring device on or about January 12, 2015, through October 4, 2015, ICE did not review the need for Plaintiff's placement in the ankle monitoring device. *Id*. at 15.

2

In September 2015, the ISAP office referred Plaintiff to a medical clinic in Waukegan to be evaluated based on her complaints, but the first available appointment at the medical clinic was on October 20, 2015. *Id*. at ¶ 21. On October 4, 2015, while walking down stairs at her residence, Plaintiff sustained a right ankle fracture caused by the physical stress the ankle monitor placed on her ankle. *Id*. at ¶ 22. Plaintiff sought emergency medical treatment the same day. *Id*. The following day, Plaintiff underwent surgical treatment consisting of open reduction internal fixation of the right ankle fracture. *Id*.

Plaintiff filed this lawsuit on October 4, 2017. [See 1.] Plaintiff seeks to bring a claim under the Federal Tort Claims Act against the Government (Count I) and a negligence claim against B.I. (Count II). [See 16.] Defendant B.I. answered Plaintiff's amended complaint [17], but the Government moved to dismiss the amended complaint for lack of jurisdiction. [See 18.] In support of its motion, the Government attached the declaration of Paul C. Morley, an ICE deportation officer. [19-1.] Officer Morley avers that responsibility for the placement and monitoring of the ankle bracelet had been contracted by ICE to a private vendor (*i.e.*, B.I.) and that ICE was not involved with or responsible for the placement or monitoring of the device on Plaintiff. [19-1 (Morley Decl.), at ¶¶ 4-6, 11-12.] Officer Morley further avers that ICE and the Department of Homeland Security (DHS) were not responsible for monitoring the day-to-day operations of B.I. *Id*. at ¶¶ 6, 11-12. According to Officer Morley, "[o]nce [Plaintiff] was enrolled in the monitoring program provided by B.I., ICE and its employees were not involved with or responsible for the placement or monitoring of the GPS ankle bracelet on [Plaintiff]." *Id*. at ¶ 12. "ICE employees did not conduct any interviews with [Plaintiff], either in-person or by telephone, and ICE employees did not conduct any home inspections to verify [Plaintiff's] compliance with the supervised release order." *Id*.

3

Attached to the declaration are portions of the United States' contract with B.I. [19-1, at 6-9.] The full contract is referenced in the government's memorandum in support of its motion to dismiss [19, at 2] and is publicly available on ICE's website. *Id*. at 2 n.3. Although the Court cannot summarize the substance of all 276 pages of contractual documents, the Court notes that the contract contains detailed requirements regarding how the contract is to be carried out. See Contract No. HSCEDM-14-D-00004 between B.I. and United States of America, available at https://www.ice.gov/doclib/foia/contracts/biIncorporatedHSCEDM14D00004.pdf.

**II.      Legal Standard**

The standard that the Court applies to a Federal Rule of Civil Procedure Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), overruled on other grounds by *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443-44; *United Phosphorus*, 322 F.3d at 946. In ruling on the motion, the district court also may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden is on the party asserting that jurisdiction exists—

here, Plaintiff. *Id.*; see also *Gonzalez v. Bank of Am., N.A.*, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) ("the plaintiff bears the burden of establishing the basis for the court's jurisdiction").

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III. Discussion

The government generally is "immune from suits for money damages under the principle of sovereign immunity." *Collins v. United States*, 2005 WL 946896, at *3 (N.D. Ill. Apr. 19, 2005). However, through the Federal Tort Claims Act ("FTCA"), Congress has enacted a broad waiver of that immunity authorizing suits for money damages against the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission

of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable[.]" 28 U.S.C. § 1346(b); *Calderon v. United States*, 123 F.3d 947, 948 (7th Cir. 1997). This broad waiver of sovereign immunity is subject to a number of exceptions, including two exceptions raised by the Government in this case—the independent contractor exception (pursuant to § 2671) and the discretionary function exception (pursuant to § 2680(a)).

### A. Jurisdiction

As a preliminary matter, the Court must address whether the exceptions to the FTCA's waiver of immunity are jurisdictional. The exceptions to the FTCA at issue "may be treated as jurisdictional in many circuits, but the Seventh Circuit has unequivocally rejected this approach." *Moore v. United States*, 2018 WL 1035872, at *2 (N.D. Ill. Feb. 22, 2018) (citations omitted); see also *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) ("The statutory exceptions enumerated in § 2680(a)-(n) to the United States'[ ] waiver of sovereign immunity * * * limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts."). The Government argues that the Seventh Circuit's "self-described minority opinion is likely mistaken and [does] not survive the Supreme Court's decision in *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015)" and *Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016). [21, at 9 n.3; 28, at 1.] However, neither of those cases addressed the precise issue currently before the Court—namely, whether the exceptions to the FTCA are jurisdictional.

In *Wong*, the Supreme Court held that the FTCA's time bars are nonjurisdictional. 135 S. Ct. at 1638. In reaching this conclusion, the Supreme Court noted that it "has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is

6

not jurisdictional." *Id*. at 1633. Because the FTCA's time limitations (§ 2401(b)) are in a different section of Title 28 than the FTCA's jurisdictional grant (§ 1346(b)), the statute's structural divide indicates that Congress did not intend for the time limitations to be jurisdictional. *Id*. The Supreme Court did not, however, address whether the FTCA's exceptions are jurisdictional. The Government recognizes that the FTCA's exceptions are found in a different chapter of Title 28—Chapter 171—than the jurisdictional grant. Still, the Government argues that because the jurisdictional grant references Chapter 171, the exceptions also are jurisdictional.

While the Court recognizes the logic of the Government's argument, the argument overlooks the fact that Chapter 171 references many other provisions that the Supreme Court has concluded are not jurisdictional in other contexts. In *Parrott*, the Seventh Circuit explained:

> Section 1346(b) is subject to chapter 171 in its entirety, not to § 2680 specifically. Chapter 171 covers a great deal of ground: it defines various terms, § 2671; it establishes rules for administrative adjustment of claims, § 2672; it requires exhaustion of administrative remedies, § 2675; it stipulates that the remedies it contains are exclusive, § 2679; and it carves out exceptions to its coverage, § 2680. One could not find the exceptions of § 2680 to be jurisdictional without at the same time giving jurisdictional status to the remainder of these provisions, including the exhaustion rule. This result, however, would be inconsistent with the way that the Supreme Court has treated filing rules in the analogous context of a lawsuit claiming employment discrimination by a federal agency. See *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 93-96 (1990); see also *McNeil v. United States,* 508 U.S. 106, 112 (1993) (discussing the Federal Tort Claims Act's rules as setting up prerequisites to suit, not jurisdictional barriers).

536 F.3d at 634. Given that Chapter 171 references other requirements for bringing FTCA claims that the Supreme Court has held are nonjurisdictional in other contexts, the fact that the FTCA's jurisdictional grant references Chapter 171 does not necessarily mean that Chapter 171 in its entirety is on the jurisdictional divide of the statute.

The Supreme Court's decision in *Simmons* does more to call into question the Seventh Circuit's treatment of the FTCA's exceptions as non-jurisdictional. In that case, the district court

7

dismissed plaintiff's FTCA claim based upon the FTCA's discretionary function exception. *Simmons*, 136 S. Ct. at 1846. The plaintiff then brought a new lawsuit alleging constitutional violations, but the district court dismissed that lawsuit based upon the FTCA's judgment-bar provision. *Id*. The Supreme Court held that the judgment-bar provision does not apply to claims that are dismissed under § 2680's exceptions. *Id*. at 1850. In reaching this conclusion, the Court considered the language of the FTCA's "exceptions" section. After quoting § 2680's language, the Court stated: "'[S]ection 1346(b) of this title' is the provision giving district courts FTCA jurisdiction. And the 'Exceptions' to which those portions of the FTCA 'shall not apply' are 13 categories of claims[.]"[1] *Id*. at 1847 (quoting § 2680). The Supreme Court went on to note—without disagreement—that "[b]oth parties agree that district courts do not have jurisdiction over claims that fall into one of the 13 categories of 'Exceptions' because 'section 1346(b) of this title'—the provision conferring jurisdiction on district courts—does 'not apply' to such claims." *Id*. (emphasis added). According to the Government, this language implicitly recognizes that the FTCA's exceptions (including the contractor exception and discretionary function exception) are jurisdictional.

While the Government presents a serious argument, this Court is bound by a decision of the Seventh Circuit unless it is "powerfully convinced that the [Seventh Circuit] would overrule it at the first opportunity." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (citing *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731 (7th Cir. 1986)); see also *Price v. City of Chicago*, 2017 WL 36444, at *6 (N.D. Ill. Jan. 4, 2017) (collecting cases). The Court has

---

[1] The Court notes that the independent contractor exception is not one of the thirteen exceptions listed in 28 U.S.C. § 2680. Rather, it is an independent requirement found in 28 U.S.C. § 2671. However, both § 2680 and § 2671 are found in Chapter 171. Thus, to the extent that the thirteen exceptions listed in § 2680 are jurisdictional by way of the jurisdictional grant's reference to Chapter 171, the independent contractor exception also would be considered jurisdictional.

to be "almost certain that the higher court would repudiate the doctrine if given the chance to do so" before it can disregard a higher court's precedent. *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (citations omitted). Because the Supreme Court has not addressed the precise issue before the Court, the Government has not satisfied that demanding standard. Although dicta in *Simmons* supports the conclusion that the FTCA's exceptions are jurisdictional, the parties in *Simmons* did not dispute that point. This is likely because the Sixth Circuit—where the case originated—treats the FTCA's exceptions as jurisdictional. *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 580 (6th Cir. 2014) ("We have repeatedly taken the opposite view [as the Seventh Circuit], which is that we lack subject-matter jurisdiction over an FTCA claim if the discretionary-function exception applies in a given case." (citations omitted)). The question before this Court therefore is outside the adversarial issues presented to the Supreme Court in *Simmons*. Although the Supreme Court likely would have addressed any jurisdictional problems *sua sponte*, the plaintiff in *Simmons* brought constitutional claims that did not require invocation of the FTCA. It therefore appears that the Supreme Court had no occasion to make an independent determination in regard to whether the FTCA's exceptions limited its jurisdiction.

Furthermore, since *Wong* and *Simmons* were decided, the Seventh Circuit has continued to treat the discretionary function exception as "a defense to liability, not a jurisdictional bar[.]" *See, e.g., McCoy v. United States*, 731 F. App'x 524, 526 (7th Cir. 2018) (citing *Parrott*, 536 F.3d at 634). Thus, consistent with binding Seventh Circuit precedent, the Court will treat the FTCA exceptions at issue as claims-processing rules, not as jurisdictional bars.

    **B.**    **Contractor Exception**

The Government further argues that the Court should dismiss Plaintiff's negligence claim against it because the FTCA—the only waiver of the United States' sovereign immunity in this

9

case—specifically excludes acts or omissions committed by contractors. Under the FTCA, the government only is liable for torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Pursuant to § 1346(b), an "employee of the Government" includes "officers or employees of any federal agency * * * and persons acting on behalf of a federal agency in an official capacity [.]" 28 U.S.C. § 2671. However, the term "federal agency" is defined to exclude "any contractor with the United States." *Id*.; see also *Quilico v. Kaplan*, 749 F.2d 480, 482-83 (7th Cir. 1984). "In applying [the] independent contractor exception to the waiver of immunity, a critical element in distinguishing an agency from a contractor is the power of the [government] to control the detailed physical performance of the contractor." *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018) (internal quotations omitted). Thus, the key question here is "whether [B.I.'s] day-to-day operations are supervised by the" Government. *United States v. Orleans*, 425 U.S. 807, 815 (1976). Other relevant considerations include whether the Government has authority to make personnel decisions for the entity and whether the government controls the finances of the entity. *Alinsky v. United States*, 156 F. Supp. 2d 908, 2001 WL 1095015, at *4 (citing *Peoples Gas Light & Coke Co. v. United States*, 1990 WL 129359, at *4 (N.D. Ill. Aug. 27, 1990)).

Here, the Government bases its argument that the independent contractor exception applies on (i) portions of the contract between the United States and B.I., and (ii) a declaration submitted by one of its deportation officers. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Under this standard, the Government recognizes that the declaration cannot be considered in ruling on its motion to dismiss under Rule 12(b)(6). [28, at 7 n.1.] The Government argues, however, that the Court can consider its contract with B.I. because it is referenced in Plaintiff's complaint and central to her claim. It is true that the contract is mentioned once in the amended complaint. [16, at ¶ 16 ("On and after January 12, 2015, through September 2015, the plaintiff complied with all check-in or reporting requirements as a participant in ISAP by appearing in-person at the Chicago office of ISAP operated by B.I. through a contract with defendant USA's ICE.").] But the contract is not central to Plaintiff's claim against the United States. *Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at *4 (N.D. Ill. Sept. 22, 2017) (declining to consider document referenced once in complaint, where the document was not a copy of a written instrument upon which the action was based). Because the contract is not properly before the Court on a motion to dismiss under Rule 12(b)(6), the Government's motion to dismiss Plaintiff's FTCA claim pursuant to the contractor exception is denied.[2]

Furthermore, the Government's argument that the independent contractor exception applies is based on the assumption that Plaintiff's claim against it entirely is based on misconduct by B.I. However, Plaintiff alleges that an employee of the United States visited Plaintiff's home and ignored her complaints.[3] [16, at ¶¶ 15, 18.] Plaintiff further alleges that removal of the

---

[2] The Government argues that "even if the [C]ourt declines to consider the contract that the United States attached to the motion, the United States is also shielded from liability in this suit because of the application of the discretionary function exception" [28, at 7], implicitly recognizing that it is not shielded from liability under the contractor exception if the contract is excluded.

[3] Although the Government submitted an affidavit averring that no ICE employee ever conducted home inspections to monitor Plaintiff's compliance with the conditions of her release [19-1, at ¶ 12], the Court cannot consider that evidence on the United States' motion to dismiss under Rule 12(b)(6). The Government also argues that its contract with B.I. requires that all home visits of ISAP participants be performed by B.I. [21, at 6 n.1]. Even if the Court were to consider this contractual language in ruling on the Government's motion to dismiss, the cited contractual provision provides that the contractor shall provide services—such as home visits—"when selected and assigned by ATD Officers on a case by case [sic] basis[.]" Contract No. HSCEDM-14-D-00004 between B.I. and United States of America, available

monitoring device required action by ICE. *Id*. at ¶ 13. Thus, even assuming B.I. is an independent contractor, Plaintiff alleges misconduct on the part of the Government. See *Cesar v. Achim*, 2009 WL 2225414, at *2 (E.D. Wis. July 22, 2009) (denying motion to dismiss where plaintiff alleged that "employees of the United States * * * had personal involvement in the claims at issue"). Accordingly, the FTCA's contractor exception does not require dismissal of Plaintiff's claim against the Government.

### C. Discretionary Function Exception

The Government also argues that Plaintiff's claim against it is barred by the FTCA's discretionary function exception, which prohibits any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the "discretionary function exception" to the FTCA's grant of federal jurisdiction is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

"The exception is an affirmative defense, and to prevail on it, the government must establish two elements 'beyond reasonable dispute.'" *McCoy*, 731 F. App'x at 526 (quoting *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014); *Palay v. United States*, 349 F.3d 418, 427 (7th Cir. 2003)). First, the Government conduct must involve "an element of judgment or choice[.]" *United States v. Gaubert*, 499 U.S. 315, 322 (1992); see also *Lipsey v. United States*, 2018 WL 282932, at *3 (7th Cir. Jan. 4, 2018). Government conduct is not discretionary if it is

---

at https://www.ice.gov/doclib/foia/contracts/biIncorporatedHSCEDM14D00004.pdf, at 110. It is not clear from this language that ICE relinquished all authority and ability to conduct home visits. The Court therefore cannot disregard Plaintiff's allegation that a person working for the government visited her home. [16, at ¶ 18.]

subject to a mandatory federal statute, regulation, or policy that requires a specific course of action. *Gaubert*, 499 U.S. at 322. Second, the judgment or choice must be "based on considerations of public policy." *Id*. at 323 (quoting *Berkovitz v. United States*, 486 U.S. 531, 537 (1988)). In determining whether particular government conduct can be said to constitute an exercise of policy judgment, courts look to "the nature of the actions taken and * * * whether they are susceptible to policy analysis." *Id*. at 325.

If both prongs of the discretionary function test are met, the United States is shielded from liability, even if its actions were negligent or constituted an abuse of discretion. See *id*. at 323; see also *Hughes v. United States*, 110 F.3d 765, 767 n.1 (11th Cir. 1997) ("Our concern under the discretionary function exception is not whether the allegations of negligence are true[.]"). While complaints typically do not address affirmative defenses, affirmative defenses may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).[4] If the allegations in a complaint leave open the possibility that a plaintiff's claimed injuries arose out of negligence having nothing to do with discretionary judgments, then it is inappropriate to grant a motion to dismiss the complaint based on the discretionary function exception.

For example, in *Palay v. United States*, the Seventh Circuit reversed a decision granting the defendant's motion to dismiss, explaining:

> As for the broader alleged failure to protect Palay from inmate violence, we likewise cannot say that this failure necessarily arose from discretionary judgments

---

[4] As the Seventh Circuit has noted, one might technically construe a motion to dismiss based on affirmative defense as a motion for judgment on the pleadings under Rule 12(c) rather than a motion to dismiss under Rule 12(b)(6). *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Regardless, the "practical effect is the same." *Id*. Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)).

rendered in furtherance of prison policy. Although *Calderon* makes clear that prison officials enjoy discretion in matters of inmate safety, we do not know at this juncture whether the actions (or inactions) leading up to the altercation in which Palay was injured involved judgment. Again, the government presumes that the circumstances that made the fight (and Palay's injury) possible were the result of discretionary decisions by prison officials charged with making such choices—for example, judgments about housing inmates affiliated with rival gangs in the same housing unit. Certainly, that is possible. But one can also imagine that negligence having nothing whatever to do with discretionary judgments enabled the fight to break out.

349 F.3d 418, 431 (7th Cir. 2003).[5] Here, the Government argues that Plaintiff's claim—which is based upon ICE's initial decision to "have an ankle bracelet monitoring device placed on plaintiff" and alleged failure "to review at any time the necessity of plaintiff wearing" the electronic monitor—falls squarely within the discretionary function exception. [19, at 6-7.]

Plaintiff appears to concede that ICE's decisions regarding whom to detain and in what manner those detained should be monitored involve elements of judgment or choice—satisfying the first prong of the discretionary function exception. Plaintiff argues, however, that the government's alleged decision to do nothing in response to her complaints regarding the placement of the electronic monitor cannot satisfy the second prong of the discretionary function exception.

---

[5] The Court recognizes that the Seventh Circuit has observed that the discretionary function exception cannot be pierced merely by showing negligent acts in implementing the discretionary function. *Cassens v. St. Louis River Cruise Lines*, 4 F.3d 508, 515 (7th Cir. 1995); see also *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir.1995) ("If it is determined that the actions of the Bureau of Prisons involved discretion, the discretionary function exception will serve to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions"). However, in *Palay*, the Seventh Circuit distinguished between negligence in relation to policy decisions and negligence having nothing to do with policy judgments. 349 F.3d at 431. In fact, in distinguishing the Seventh Circuit's decision in *Calderon v. United States*, 123 F.3d 947 (7th Cir.1997), the Seventh Circuit indicated that the discretionary function exception would not apply if prison officials simply ignored reported threats or forgot about them. *Palay*, 349 F.3d at 431 ("Unstated but implicit in *Calderon* is the assumption that prison officials in that case had taken note of the threats against the plaintiff in that case and weighed the relevant considerations in deciding how best to act (or not) in response to those threats. There is no hint, for example, that prison officials simply ignored the reported threats or forgot about them."). Based on the allegations in the complaint, the Court cannot exclude the possibility that the Government simply ignored Plaintiff's complaints without weighing any policy considerations.

Plaintiff alleges that employees working for ICE "did not review the need for [P]laintiff's placement in an ankle bracelet monitoring device[,]" [16, at ¶ 15], even though Plaintiff repeatedly complained "that the right ankle monitor was too tight and bulky, causing [P]laintiff numbness, pain, and difficulty walking." [*Id*. at ¶¶ 15-18.] Plaintiff further alleges that from March 2015 through September 2015—during her in-person appearances at the Chicago office of ISAP—she repeatedly requested that (1) her ankle monitor be replaced with a monitor that was not as tight and bulky, or (2) her ankle monitor be loosened or placed on her other ankle. *Id*. at ¶ 19. Yet nobody responded to Plaintiff's complaints until September 2015, when she finally was referred to a medical clinic to be evaluated. *Id*. at ¶¶ 20-21. Still, the first available appointment was on October 20, 2015. *Id*. at ¶ 21.

Based on these allegations, the Court is unable to determine whether the actions that allegedly resulted in Plaintiff's injuries reflected the exercise of policy judgments.[6] Although it is possible that this decision was the result of permissible policy judgments, it also is possible that the government simply ignored Plaintiff's repeated complaints without weighing relevant policy considerations. This case thus differs from the cases relied upon by the Government, in which the challenged conduct necessarily involved policy judgments. *Moore v. United States*, 2018 WL 1035872, at *3 (N.D. Ill. Feb. 22, 2018) (granting judgment on the pleadings where plaintiff

---

[6] To the extent Plaintiff challenges the initial decision to place her in an electronic monitoring bracelet, the Court agrees that such a decision necessarily would be "based on considerations of public policy." As noted by the Government, the authority of DHS and ICE to detain an alien pending removal proceedings is set forth in 8 U.S.C. § 1226(a), which provides the Secretary of Homeland Security with discretion over whether to detain non-citizens or release them on a bond or conditional parole pending a decision on whether they are to be removed from the United States. 8 U.S.C. § 1226(a); see also *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011) ("the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General"); *Douglas v. United States*, 796 F. Supp. 2d 1354 (M.D. Fla. 2011) ("Operating with limited resources, ICE must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens.").

challenged the government's investigatory and enforcement actions); *Linder v. McPherson*, 2015 WL 739633, at *16 (N.D. Ill. Jan. 29, 2015) (granting motion to dismiss where plaintiff challenged prosecutorial actions). It therefore remains for Plaintiff's claims to be fleshed out through discovery before the Court can determine whether the discretionary function exception applies.

### D. Interlocutory Appeal

Although the Court is treating the FTCA's exceptions as claims-processing rules—not jurisdictional limits—the Court recognizes that there is substantial ground for difference of opinion regarding whether the FTCA's exceptions are jurisdictional in light of recent Supreme Court cases, as discussed above. Accordingly, the Court invites the parties to consider whether the following question may be appropriate for certification for interlocutory appeal pursuant to 28 U.S. Code § 1292(b):

> Whether the exceptions to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., found in Chapter 171 of the Act—including the independent contractor exception under § 2671 and the discretionary function exception under § 2680(a)—are claims-processing rules or jurisdictional limits.

In raising this issue, the Court remains uncertain whether a ruling on this controlling question of law will materially advance the ultimate termination of the litigation (an issue the parties have yet to address), which is a prerequisite to certification for appeal under § 1292(b). Based on the information currently before the Court, it appears that—even if the exceptions to the FTCA were considered jurisdictional—some discovery would be necessary to determine whether the discretionary function exception applies. For example, it is unclear how Plaintiff could determine whether the government action or inaction in this case was based on policy considerations otherwise. Discovery also may be necessary to determine whether the contractor exception applies. Although the Government relies heavily on its contract with B.I. to argue that it was not involved in B.I.'s day-to-day operations [see 21, at 6-7; 28, at 7], the provisions of the

16

contract cited to by the Government do not conclusively establish that point. For example, the Government does not cite any contractual provision negating Plaintiff's allegation that removal of the monitoring device required action by ICE. [16, at ¶ 13.] Furthermore, other provisions of the contract suggest that the Government may have been involved in certain aspects of B.I.'s day-to-day operations. See, *e.g.*, Contract No. HSCEDM-14-D-00004 between B.I. and United States available at https://www.ice.gov/doclib/foia/contracts/biIncorporatedHSCEDM14D00004.pdf, at 103-105, 120-121 (identifying detailed descriptions regarding the qualifications and responsibilities for contractor personnel, as well as specific training requirements for case specialists and management staff).

Still, the affidavit that the Government submitted in support of its motion to dismiss provides strong evidence that B.I. was acting as an independent contractor.[7] In that affidavit, Officer Morley avers that "[o]nce [Plaintiff] was enrolled in the monitoring program provided by B.I., ICE and its employees were not involved with or responsible for the placement or monitoring of the GPS ankle bracelet on [Plaintiff]." [19-1, at ¶ 12.] Officer Morley further avers that "ICE employees did not conduct any interviews with [Plaintiff], either in-person or by telephone, and ICE employees did not conduct any home inspections to verify [Plaintiff's] compliance with the supervised release order."[8] *Id*. Plaintiff argues, however, that the extent of ICE's involvement in Plaintiff's case cannot be determined without reviewing Plaintiff's entire file. The Court

---

[7] Officer Morley's declaration avers that "ICE and DHS are not responsible for monitoring the day to day operations of [B.I.]" [19-1, at ¶ 6.] This conclusory assertion—supported only be general reference to the contract between B.I. and the United States—does nothing to support the Government's position.

[8] Plaintiff notes that the Morley Affidavit states that ICE employees did not conduct any home inspections *to verify her compliance with the supervised release order* but does not rule out the possibility that ICE employees visited Plaintiff's home for other reasons. [20, at 8.] It is unclear, however, for what other purpose ICE employees would conduct a home visit.

understands Plaintiff to be saying that even if the contractor exception is jurisdictional, some discovery would be necessary to determine whether the contractor exception applies.

Whether and to what extent jurisdictional discovery would be necessary if the FTCA's exceptions are treated as jurisdictional bears on whether a ruling on the controlling question of law identified above would materially advance the ultimate termination of the litigation. Whether any such discovery would overlap with discovery on the merits also would bear on that issue. The Court will consider any arguments on these points if any party moves for certification of the controlling question of law identified above (or a variation thereof) for interlocutory appeal pursuant to § 1292(b).

## IV. Conclusion

For the reasons set forth below, the motion [18] is denied.[9] The case is set for further status on October 4, 2018 at 9:00 a.m.

Date: September 20, 2018

_____
Robert M. Dow, Jr.
United States District Judge

---

[9] In its supplemental brief, the Government requests that in the event the Court declines to consider its exhibits in ruling on its motion to dismiss, the Court convert its motion to dismiss to a motion for summary judgement under Federal Rule of Civil Procedure 56. [28, at 7 n.2.] Because Plaintiff has not had the opportunity to address whether summary judgment would be appropriate, the Court declines to do so at this time. This denial is of course without prejudice to any subsequent motion for summary judgment that the Government may file.